IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

JENNY F. STRAYER,

    Plaintiff,

vs.                                    Civil Action 2:14-cv-251
                                        Judge Watson
                                        Magistrate Judge King

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

**REPORT AND RECOMMENDATION**

**I. Background**

This is an action instituted under the provisions of 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security denying plaintiff's application for a period of disability and disability insurance benefits. This matter is now before the Court for consideration of *Plaintiff Jenny F. Strayer's Statement of Specific Errors* ("*Statement of Errors*"), Doc. No. 10, the Commissioner's *Opposition to Plaintiff's Statement of Errors* ("*Commissioner's Response*"), Doc. No. 17, and *Plaintiff's Reply*, Doc. No. 18.

Plaintiff Jenny F. Strayer filed her application for benefits on August 17, 2010, alleging that she has been disabled since August 10, 2010. *PAGEID* 42, 199-200. Plaintiff's application was denied initially and upon reconsideration, and plaintiff requested a *de novo* hearing before an administrative law judge.

1

An administrative hearing was held on August 1, 2012, at which plaintiff, represented by counsel, appeared and testified, as did a vocational expert. *PAGEID* 56. In a decision dated November 2, 2012, the administrative law judge concluded that plaintiff was not disabled from August 10, 2010, her alleged onset date, through December 31, 2011, the date that plaintiff was last insured. *PAGEID* 49. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on January 30, 2014. *PAGEID* 32-34.

Plaintiff was 57 years of age on the date of the administrative decision. *See PAGEID* 49, 199. She has at least a high school education, is able to communicate in English, and has past relevant work as a nurse. *PAGEID* 48. Plaintiff was last insured for disability insurance purposes on December 31, 2011. *PAGEID* 44. She has not engaged in substantial gainful activity from August 10, 2010, through the date that she was last insured. *PAGEID* 44.

## II. Medical Evidence[1]

Plaintiff treated with Juan F. Lebron, M.D., on December 9, 2003, for a detachment of the retina of the left eye. *PAGEID* 317. Plaintiff continued to treat with Dr. Lebron on at least ten occasions through 2010. *PAGEID* 343-51, 393. On October 11, 2010, Dr. Lebron diagnosed lattice degeneration OU and noted that plaintiff's uncorrected vision as of September 8, 2009, was 20/25 in the right eye and 20/400 in the left eye. *Id*.

---

[1] The Court's discussion of the medical evidence is limited to the issues raised in plaintiff's *Statement of Errors*.

Plaintiff first treated with Stephen N. CaJacob, O.D., on January 13, 1990. *PAGEID* 321. On October 11, 2010, Dr. CaJacob diagnosed retinal detachment and recurrent macular hole in the left eye. *PAGEID* 324. Dr. CaJacob noted a history of retinal detachment repair with vitrectomy and cataract surgery in 2003. There was an abnormal field of vision in the left eye. *Id*.

Plaintiff was consultatively psychologically examined for the state agency by Michael J. Wuebker, Ph.D., on December 1, 2010. *PAGEID* 373-80. Dr. Wuebker assigned a global assessment of functioning score ("GAF") of 51[2] and diagnosed dysthymic disorder; social phobia; cognitive disorder, NOS; and personality disorder, NOS (borderline, avoidant, and dependent traits). *PAGEID* 379. According to Dr. Wuebker, plaintiff's ability to relate to others, including fellow workers and supervisors, is moderately impaired, *id*., plaintiff's ability to understand, remember, and follow simple instructions in a work environment is mildly impaired, *PAGEID* 380, and plaintiff's ability to maintain attention, concentration, persistence, and pace to perform simple repetitive tasks in a work environment is moderately impaired. *Id*. "The more a job would require social contact/interaction, the greater would seemingly be her impairment." *Id*. Dr. Wuebker further opined that plaintiff is moderately impaired in her

---

[2]
> "The GAF scale is a method of considering psychological, social, and occupational function on a hypothetical continuum of mental health. The GAF scale ranges from 0 to 100, with serious impairment in functioning at a score of 50 or below. Scores between 51 and 60 represent moderate symptoms or a moderate difficulty in social, occupational, or school functioning . . . ."

*Norris v. Comm'r of Soc. Sec.*, 461 F. App'x 433, 436 n.1 (6th Cir. 2012).

ability to withstand the stress and pressures associated with day-to-day work activity.  *Id*.

Carl Tishler, Ph.D., reviewed the record and completed a mental residual functional capacity assessment on December 18, 2010.  *PAGEID* 92-93.  According to Dr. Tishler, plaintiff was moderately limited in her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.  *PAGEID* 93.  Plaintiff was also moderately limited in her ability to accept instructions and respond appropriately to criticism from supervisors.  *Id*.

Leslie Green, M.D., reviewed the record and completed a physical residual functional capacity assessment on January 10, 2011.  *PAGEID* 89-91.  According to Dr. Green, the record documented a diagnosis of macular degeneration of the left eye.  Plaintiff could lift and/or carry 50 pounds occasionally and 25 pounds frequently.  *PAGEID* 89-90.  She could stand and/or walk for about six hours in an eight-hour workday and sit for about six hours in an eight-hour workday.  *PAGEID* 90.  Dr. Green opined that plaintiff could never climb ladders, ropes, or scaffolds, and would have limited acuity, accommodation, and field of vision in her left eye and limited depth perception in both eyes.  *PAGEID* 90-91.  Plaintiff should also avoid all exposure to hazards such as machinery and heights.  *PAGEID* 91.

Walter Holbrook, M.D., reviewed the record and completed a physical residual functional capacity assessment on April 15, 2011.  *PAGEID* 106-08.  Dr. Holbrook opined that, as a result of plaintiff's retinal detachment

and buckling, plaintiff would be limited to lifting and/or carrying 20 pounds occasionally and 10 pounds frequently, standing and/or walking for about six hours in an eight-hour workday, and sitting for about six hours in an eight-hour workday. *PAGEID* 106. Plaintiff could never climb ladders, ropes, or scaffolds, and would have limited acuity, accommodation, and field of vision in her left eye and limited depth perception in both eyes. *PAGEID* 107. Plaintiff should also avoid all exposure to hazards such as machinery, hazardous equipment, commercial vehicles, and unprotected heights. *PAGEID* 108.

Bruce Goldsmith, Ph.D., reviewed the record and, on April 21, 2011, completed a mental residual functional capacity assessment. *PAGEID* 108-10. According to Dr. Goldsmith, plaintiff was moderately limited in her ability to (1) maintain attention and concentration for extended periods, (2) perform within a schedule, maintain regular attendance, and be punctual within customary tolerances, (3) complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, and (4) respond appropriately to changes in the work setting. *Id*. Plaintiff may have "occasional (once per week) interruptions from her depression or anxiety performing a normal workweek." *PAGEID* 109.

Jerda M. Riley, M.D., reviewed the record and, on May 3, 2011, summarized the visual and exertional assessments as follows:

> The [state agency] established exertional limitations visually exertional limitations [sic] of 50 lbs occasionally and 25 lbs frequently can apply along with limitations of depth perception and to avoid activities requiring operating moving vehicles, working at hazardous heights and with hazardous machinery. This can include avoiding machines with open areas, conveyors,

5

> parts that can engage the body or body part of the claimant or fellow worker, machines with blades or combustible parts.

PAGEID 382.

Michael Kovar, Ph.D., reviewed the evidence relating to plaintiff's mental impairments and, on May 9, 2011, opined that plaintiff "would be limited to simple, routine work-like activities." PAGEID 385-90.

### III. Administrative Decision

The administrative law judge found that plaintiff's severe impairments consist of dysthymia, poor vision, and a cognitive disorder based on low visual memory. PAGEID 44. The administrative law judge also found that plaintiff's impairments neither meet nor equal a listed impairment and leave plaintiff with the residual functional capacity ("RFC") to perform

> medium work as defined in 20 CFR 404.1567(c) except the claimant is precluded from working at heights, from working around hazardous machinery, from work that requires balancing, and from work that requires commercial driving. She is also limited to unskilled work as defined by the Dictionary of Occupational Titles, and low stress work which, for this claimant, means that she cannot do work that requires assembly-line production quotas or that is fast-paced work.

PAGEID 45-46. Although this RFC precludes plaintiff's past relevant work, the administrative law judge relied on the testimony of the vocational expert to find that plaintiff is nevertheless able to perform a significant number of jobs in the national economy, including such jobs as laundry worker and machine packager. PAGEID 48-49. Accordingly, the administrative law judge concluded that plaintiff was not disabled within the meaning of the Social Security Act from August 10, 2010, through December 31, 2011. PAGEID 49.

**IV. Discussion**

Pursuant to 42 U.S.C. § 405(g), judicial review of the Commissioner's decision is limited to determining whether the findings of the administrative law judge are supported by substantial evidence and employed the proper legal standards. *Richardson v. Perales*, 402 U.S. 389 (1971); *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Buxton v. Haler*, 246 F.3d 762, 772 (6th Cir. 2001); *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). This Court does not try the case *de novo*, nor does it resolve conflicts in the evidence or questions of credibility. *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, this Court must examine the administrative record as a whole. *Kirk*, 667 F.2d at 536. If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if this Court would decide the matter differently, *see Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *Longworth*, 402 F.3d at 595.

In her *Statement of Errors*, plaintiff first argues that the administrative law judge erred in evaluating Dr. Holbrook's medical opinion. *Statement of Errors*, pp. 6-11. As noted *supra*, Dr. Holbrook reviewed the record and completed a residual functional capacity assessment

7

on April 15, 2011. *PAGEID* 106-08. Dr. Holbrook opined that, because of plaintiff's vision problems, she would be limited to light work; could never climb ladders, ropes, or scaffolds; could not operate hazardous equipment or commercial vehicles; and would have visual limitations. *Id*. As a physician who did not examine plaintiff but who provided a medical opinion in this case, Dr. Holbrook is properly classified as a nonexamining source. 20 C.F.R. § 404.1502(A nonexamining source is "a physician, psychologist, or other acceptable medical source who has not examined [the claimant] but provides a medical or other opinion in [the claimant's] case."). An administrative law judge is required to evaluate every medical opinion, regardless of its source. 20 C.F.R. §§ 404.1520b, 404.1527(b). When evaluating the opinion of a state agency reviewing physician such as Dr. Holbrook, the administrative law judge should consider factors "such as the consultant's medical specialty and expertise in [the Commissioner's] rules, the supporting evidence in the case record, supporting explanations the medical or psychological consultant provides, and any other factors relevant to the weighing of the opinions." 20 C.F.R. § 404.1527(e)(2)(ii). "Unless a treating source's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical . . . consultant," "as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources." *Id*.

    In the case presently before the Court, the administrative law judge evaluated the state agency reviewing physicians' opinions as follows:

> State agency reviewing consultants assessed the claimant's physical residual functional capacity at the medium exertion

> level with the hazard restrictions set forth above due to her visual impairment. Their assessments are consistent with the evidence from the claimant's ophthalmologist cited herein above and with the evidence from her psychological [consultative examination] with Dr. Wuebker. . . .
>
> . . .
>
> The medical record, including evidence from the claimant's treating physician, Juan Lebron, M.D., and Stephen CaJacob, OD, does not establish a physical impairment except for the claimant's visual limitation. However, the limitation requires restricting the claimant to medium work with the hazard restrictions described more specifically herein above. Accordingly, great weight has been given to the assessment by the State agency's medical consultants. The restriction to medium exertion is also consistent with the advice from the claimant's treating physician and ophthalmologist to avoid straining herself so as not to put pressure on her left eye.

*PAGEID* 47.

Plaintiff argues that the administrative law judge materially misrepresented Dr. Holbrook's opinion by characterizing the opinions of all the state agency physicians as consistent with medium exertion. *Statement of Errors*, pp. 6-9. Plaintiff contends, further, that the administrative law judge committed reversible error by failing to address the inconsistencies in these opinions. *Id*. The Commissioner contends that the administrative law judge discounted Dr. Holbrook's opinion and gave great weight to only the opinions of the state agency physicians, *i.e.*, Dr. Riley and Dr. Green, who opined that plaintiff is capable of a reduced range of medium exertion. *Commissioner's Response*, p. 4. The Commissioner's argument is not well taken.

The administrative law judge found that the "[s]tate agency reviewing consultants assessed the claimant's physical residual functional

capacity at the medium exertion level," and she assigned "great weight" to the "assessment by the State agency's medical consultants." *PAGEID* 47. Contrary to the Commissioner's contention, there is no indication that the administrative law judge was referring to only the opinions of Dr. Riley and Dr. Green when she assigned great weight to the "assessment by the State agency's medical consultants" or when she noted that the "State agency reviewing consultants assessed the claimant's physical residual functional capacity at the medium exertion level." The inconsistency between the opinions of Dr. Riley and Dr. Green, who opined that plaintiff is capable of medium work, and the opinion of Dr. Holbrook, who limited plaintiff to a reduced range of light work, is significant. Particularly is this so where, as here, the plaintiff is an individual of advanced age. *See, e.g.*, 20 C.F.R. § Pt. 404, Subpt. P, App. 2, Rule 202.06.

Even if the Commissioner's interpretation of the administrative decision – *i.e.,* that the administrative law judge was referring only to the opinions of Dr. Riley and Dr. Green when she assigned great weight to the state agency opinions – one is forced to conclude that the administrative law judge wholly failed to consider Dr. Holbrook's opinion. Although, as the Commissioner argues, *see Commissioner's Response*, p. 5, an administrative law judge is not required to "discuss in detail" every aspect of a state agency physician's medical opinion, it must be apparent from a fair reading of the administrative decision that the medical opinions of all nonexamining sources were at least considered. That is simply not the case here.

Under these circumstances, the Court concludes that the matter must

be remanded for further consideration of the opinion of Dr. Holbrook.

It is accordingly **RECOMMENDED** that the decision of the Commissioner be **REVERSED** pursuant to Sentence 4 of 42 U.S.C. § 405(g) and that this action be **REMANDED** to the Commissioner of Social Security for further consideration of Dr. Holbrook's opinion.

If any party seeks review by the District Judge of this *Report and Recommendation*, that party may, within fourteen (14) days, file and serve on all parties objections to the *Report and Recommendation*, specifically designating this *Report and Recommendation*, and the part thereof in question, as well as the basis for objection thereto.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  Response to objections must be filed within fourteen (14) days after being served with a copy thereof.  Fed. R. Civ. P. 72(b).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to *de novo* review by the District Judge and of the right to appeal the decision of the District Court adopting the *Report and Recommendation*.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Smith v. Detroit Fed'n of Teachers, Local 231 etc.*, 829 F.2d 1370 (6th Cir. 1987); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

October 29, 2014                              *s/Norah McCann King*
                                              Norah M<sup>c</sup>Cann King
                                      United States Magistrate Judge